# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-1144V
(Not to be Published)

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| DUKE DUQUETTE, | * | |
| | * | |
| Petitioner, | * | Filed: May 22, 2015 |
| | * | |
| v. | * | Fact Ruling; Proof of |
| | * | Vaccination; Tetanus Diphtheria |
| SECRETARY OF HEALTH | * | acellular-Pertussis ("Tdap") Vaccine; |
| AND HUMAN SERVICES, | * | Situs of Vaccination |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

Howard S. Gold, Gold Law Firm, LLC, Wellesley Hills, MA, for Petitioner.

Michael Milmoe, U.S. Dep't of Justice, Washington, DC, for Respondent.

## FACT RULING ON PROOF OF VACCINATION[1]

In this petition, initially filed on November 24, 2014, Duke Duquette seeks to establish that the Tetanus Diphtheria acellular-Pertussis ("Tdap")[2] vaccine that he received on June 13, 2012, caused him to develop lymphadenopathy and complex regional pain syndrome ("CRPS"). The existing documentary proof of vaccination is not in dispute, and confirms the date Mr. Duquette alleged he received the vaccination, but does not specify whether it was given in Petitioner's right or left arm. Petitioner now moves (based on circumstantial evidence) for a fact finding that the Tdap vaccine was administered in his left arm. After my review of the evidence submitted and the parties' briefs, I find that Petitioner has established adequate proof of the

---

[1] Because this ruling contains a reasoned explanation for my action in this case, it will be posted on the website of the United States Court of Federal Claims in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the inclusion of certain kinds of confidential information. To do so, Vaccine Rule 18(b) provides that each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the ruling will be available to the public. *Id.*

[2] Petitioner interchangeably refers to the vaccine he received in his petition on June 13, 2012, as Dtap and Tdap, which are somewhat different vaccines in formulation. The document recording the vaccination, however, identifies the "Tdap" vaccine as the one received. Pet'r's Ex. 2, filed Nov. 28, 2014, (ECF No. 5-2) at 1.

1

location of the vaccination.

## I. Factual Background and Procedural History

Petitioner alleges that he received the Tdap vaccine on June 13, 2012, at the offices of Tri River Internal Medicine in Uxbridge, Massachusetts. *See* Pet., filed Nov. 24, 2014 (ECF No. 4) ¶3. Two days later, he went to the emergency room at the Milford Regional Medical Center in Milford, Massachusetts because he was experiencing swelling and pain on the left side of his neck. Pet. ¶ 4; Pet'r's Ex. 4, filed Nov. 28, 2014, (ECF No. 5-4) at 50. By June 16, 2012, the pain and swelling Mr. Duquette was experiencing extended to his left arm and hand, as well as the left side of his jaw. Pet. ¶ 6; Pet'r's Ex. 4 at 63. He was diagnosed that July with edema in his arm and lymphadenopathy, and has since that time continued to experience significant numbness and pain on his left side, from neck and shoulder to hand. Pet. ¶¶ 9-11; Pet'r's Ex. 13, filed Nov. 28, 2014 (ECF No. 7-3) at 4. The petition alleges that these injuries were caused in fact by the Tdap vaccine.

The proof of vaccination submitted in connection with Mr. Duquette's petition plainly memorializes that he received the Tdap vaccine on June 13, 2012, as he alleges. *See* Pet'r's Ex. 2, filed Nov. 28, 2014 (ECF No. 5-2). But that same record does not identify the exact location on Mr. Duquette's body where the vaccine was administered. There are, however, several references in the medical record retrospectively stating that Mr. Duquette received the Tdap vaccine in his left arm, including but not limited to the following:

- a notation from Mr. Duquette's June 15, 2012, visit to the Milford Regional Medical Center stating that he "did receive a tetanus shot a few days ago in the left deltoid region" (Pet'r's Ex. 4 at 53); and

- at a June 18, 2013, visit to his primary care physician, Dr. Jennifer Gartman, Mr. Duquette informed her that the Tdap vaccine had been administered in his left arm in the prior year (Pet'r's Ex. 13 at 1).

Not long after this petition was filed, Petitioner filed a large number of medical records to support his claim. *See generally* ECF Nos. 5-7, dated Nov. 28, 2014 (containing Pet'r's Exs. 1 - 14). Respondent's counsel subsequently appeared in the matter, and then filed a status report indicating that the parties could not file a joint statement of completion until Petitioner had provided and filed evidence precisely establishing that the Tdap vaccine was administered in his left arm. *See* Joint Status Report, dated Feb. 23, 2015 (ECF No. 10). Thereafter, Petitioner filed a Status Report detailing some of the evidence that he believes corroborates his allegation that he received the Tdap vaccine in his left arm, and asking me to make a fact finding on this matter. Status Report, dated Apr. 2, 2015 (ECF No. 11). During an April 27, 2015, status conference,

Respondent indicated that she did not intend to oppose Petitioner's request or offer evidence to rebut his allegations.

## II. Analysis

A Vaccine Act petitioner must, as a threshold matter in advancing a claim for damages, establish by a preponderance of the evidence receipt of "a vaccine set forth in the Vaccine Injury Table." § 300aa–11(c)(1)(A). The preponderance of the evidence standard means that an allegation is established to be "more likely than not." *Moberly v. Sec'y of Health & Human Servs.*, 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010).

Although contemporaneous documentation of vaccination from a healthcare provider is the best evidence concerning the fact and circumstances of a vaccine's administration, it is not absolutely required in all cases. *Centmehaiey v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 612, 621 (1995) ("[t]he lack of contemporaneous documentary proof of a vaccination . . . does not necessarily bar recovery"). Special masters have thus found that vaccine administration occurred even in the absence of direct documentation. In such cases, preponderant evidence was provided in the form of other medical records and/or witness testimony.

For example, corroborative, though backward-looking, medical notations have been found to tip the evidentiary scale in favor of vaccine receipt. *Lamberti v. Sec'y of Health & Human Servs*, No. 99–507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007) (finding multiple medical record references to vaccine receipt constituted adequate evidence of administration); *Groht v. Sec'y of Health & Human Servs*, No. 00–287V, 2006 WL 3342222, at *2 (Fed. Cl. Spec. Mstr. Oct. 30, 2006) (finding a treating physician's note—"4/30/97—Hep B. inj. # 1 (not given here) (pt. wanted this to be charted)"— to be sufficient proof of vaccination); *Wonish v. Sec'y of Health & Human Servs.*, No. 90–667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (finding parental testimony "corroborated strongly by medical records [referring] back to the [vaccination]" to be sufficient to establish vaccine administration).

Contemporaneous medical records created at the time of the events they describe can be especially probative in resolving a fact dispute, because they are presumed to be accurate and "complete" (*i.e.,* presenting all relevant information on a patient's health problems). *Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). This presumption is based on the linked propositions that (i) sick people visit medical professionals, (ii) sick people (or their guardians in the case of minors) report their health problems to those professionals, and (iii) medical professionals record what they are told or observe in examining their patients. *Cucuras v. Sec'y of Health & Human Servs.*, 26 Cl. Ct. 537, 543 (1992), *aff'd*, 993 F.2d 1525 (Fed. Cir. 1993) ("it strains reason to conclude that petitioners would fail to accurately report the onset of their daughter's symptoms. It is equally unlikely that pediatric neurologists, who are

trained in taking medical histories concerning the onset of neurologically significant symptoms, would consistently but erroneously report the onset of seizures a week after they in fact occurred.")

### III. Conclusion

In the present matter, the only fact issue in dispute is the precise location of the administration of Mr. Duquette's Tdap vaccine. Based upon my review of the record, I find that Petitioner has established by preponderant evidence that he received the Tdap vaccine in his left arm. There are sufficient corroborative records (at least one of which was created in the days immediately after Petitioner received the vaccine) to find credible his allegations that it was administered in his left arm. It is not likely the Petitioner would have misrepresented such a fact to his treaters. On the contrary, given that Mr. Duquette complained of swelling and pain on the left side of his neck, and in his left arm and hands, he may well have reasonably believed that the location of his injuries was related to the the situs of the vaccine's administration, and thus deemed it important enough of a fact to mention to his treaters. Respondent for her part has offered no evidence or arguments to rebut this showing.

This ruling makes no determination of any kind as to whether Mr. Duquette's alleged injuries are a result of an adverse reaction to the Tdap vaccination. That will be the subject of future proceedings.

Any inquiries to my office, or questions regarding this ruling, may be directed to my law clerk, Andrea Gordon, at (202) 357-6345.

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Special Master